Number 191586 and number 191640, Project Veritas Action Fund v. Rachel Splain Rollins and number 191629, K. Eric Martin et al. v. Rachel Splain Rollins. Okay, you can start. Good morning, and may it please the Court, my name is Eric Haskell. I am an assistant attorney general for the Commonwealth of Massachusetts, and I represent a district attorney in these appeals. I'd like to begin by asking to reserve three minutes of my time for rebuttal. You may. Thank you, Your Honor. These appeals are not about recording. They're about one particular distinctive type of recording, that is, recording that's done in a surreptitious manner where the recording device is not out in the open for all to see and to know that they're being recorded. In 1968, when Massachusetts was enacting its anti-eavesdropping statute, the legislature made a policy choice to focus on just that kind of surreptitious recording and eavesdropping, and really to place no restrictions on open eavesdropping and recording. Just for getting the terminology right so I understand how the statute works. Yes. Does the person recorded have to be aware of the recording in order for it to be open and not secret? The way that the state courts, the Massachusetts SJC, has interpreted the statute is that if the recording device is held out in plain view, it's deemed constructive knowledge. No matter how far away the person is? I don't think the state courts have tested every variation of that, but yes, that's the right line that they've drew between a recording device, intercepting device in the language of the statute, that is in plain view versus not in plain view. Now, the statute, as I mentioned, has no concern with open recording. We have no quarrel about that at all. This court, a little less than ten years ago in the Glick case, recognized a right to record, or what's come to be known as a right to record. And what the court held in Glick is that in certain public circumstances, there is a First Amendment right to openly record certain government officials. We have no quarrel with the holding of Glick as far as it goes, as far as I just described. But what the district court did here in this case is expanded the rule of Glick in two ways. First, it expanded it to include surreptitious recording, just the same as open recording, and that gets us into the conflict with the Massachusetts statute. The district court also interpreted Glick to cover far more government officials in far more public situations than this court appears to have held in Glick. The trouble with the district court's, one of the problems with the district court's declaration, though, is that we don't know exactly what situations, so we don't know exactly what government officials. The district court phrased... Is it possible to frame a decree that would contemplate and anticipate every possible permutation? I mean, it seems to me that what Chief Judge Saras did was attempt to outline the general parameters of a rule and recognized, as I read her opinion, that it would have to be tested case by case at the margins. Well, I agree, Your Honor, that's what the district court did. Yeah, but why isn't that a sensible way to approach this type of problem? You have a statute that the Massachusetts General Court enacted, which sweeps very broadly. The district court finds that in certain of its important applications, it is unconstitutionally overbroad, so it attempts to set out some general benchmarks and recognizes that at the margins there's going to have to be litigation to pin down the exact boundaries. And what I'm struggling with is your intimation that that's not a perfectly sensible approach to this type of problem. The trouble we have with that approach, Your Honor, is first the assumptions that the district court needs to engage in to reach that conclusion, the abstractions and the hypotheticals that the district court, or really any court, needs to indulge in to reach conclusion that broad. And then second, the indeterminates... Well, I can understand if you're challenging the district court's constitutional jurisprudence. I can understand that. But I don't know how you can expect a court, having resolved the constitutional questions the way it did, to be more exact or precise in its decree. That's what's puzzling me. Well, I think that, Your Honor, tracks back to our first argument about whether these cases are justiciable in the first place, whether the nature of the claims and the fit that they provide with the law around this right to record as it exists right now... Suppose the decree was limited just to traditional public fora. Would you think it was then right? Your Honor, I think that the question of the constitutionality of a surreptitious recording is going to depend on a constellation of circumstances. And so, without more definition around the public official being recorded... Police officers in traditional public fora doing public duties. Would that be right? Your Honor, I still don't think that's the level of concreteness that the law requires in order to find a justiciable controversy. The reason for that is that police officers do a lot of different things in public. Many of them are supposed to be and ought to be, and it's good for everybody for them to be broadcasted to the public view. There are some things that police officers do in public that are more of a private nature. Such as? The kind of hypotheticals that we commonly have in mind are, say, a meeting with a confidential informant A meeting with a confidential informant, if it's done in public, what's wrong with that being recorded? If the police officer wants that meeting to be truly confidential, the police officer can control where the meeting is held easy enough to hold it in private. Any police officer who meets in a public place with a confidential informant realizes that she's running certain risks of being observed or being overheard and the like. Well, as the law stands right now, Your Honor, the police certainly do understand that they're running some risks about being recorded in Massachusetts being recorded openly. And so the police, in that situation, under the law as it stands right now, are able to look around them and say, oh, there's people passing by, maybe we shouldn't have this conversation here. Well, after your decree, they'll know that they should be even more careful. Well, and I think, Your Honor, that raises the point that we make in our brief about the interests that are on both sides of this question. While there's no doubt a First Amendment right to learn about the government, to gather information about the government, anybody who's talking in public also has rights vis-à-vis what they say. They have the right not to speak. They have the right to make intelligent choices about what they choose to say and what they choose to do. Why don't we wait until there is a case that, in fact, raises exactly that issue, i.e., some bystander who says, you know, I'm not part of the police, I'm not part of the apparatus, and yet they've recorded me and they've recorded me, you know, we'll assume without my knowledge or reasonably imputed knowledge, and decide the case then. For the present time, that is not what is before us, and that is not what was before the district court. So leave the general rule where it is and wait for the case that you are describing. In our view, Your Honor, that is how the development of the law in this area ought to unfold, is in the context of appropriately concrete cases that can form appropriately tailored rules. But where there are interests on all sides of this question that vary depending on the circumstance, our view is that it's not amenable to the kind of broad brush indeterminate adjudication of the district court. In effect, you're saying a facial challenge cannot be brought in this context, and the issue is why not. In other words, if many, many applications can be identified which are not of the kind that would raise your concern, the recording is in a public place, it's during public duties, the recording doesn't pick up any private speech, or alternatively, the private speaker speaking extremely loudly or in a way in which they have no conceivable privacy expectation, one can imagine many, many, many circumstances where this statute would stand in the way of such recording, which is traditionally the type of thing that grounds a facial challenge, because there is so many potentially unconstitutional applications. You're saying because you can identify some constitutional applications, all of it must be done as applied, but that seems inconsistent with the whole idea that a facial challenge can be brought. Well, Your Honor, what's before this court is a particular claim, and I think it's against the particular claim that the justiciability of the case and the rule of law that the court passes down has to be measured against that claim. The claim here is not a traditional pure facial challenge, that is, a challenge to the terms of the statute on its face, nor, with the exception of Project Veritas' cross appeal, is it a First Amendment overbreadth challenge. Well, it's as much a facial challenge as Reed was a facial challenge. Well, and what Reed held, Your Honor, is that a case of that type is subject to analysis as a facial challenge to the extent that the claim reaches, and so our view is that what the plaintiffs have to do to sustain their claim here is to show, like the Supreme Court held in Reed and like this court held in Showtime Entertainment, that within the scope of their claim, the statute lacks a plainly legitimate sweep. Our argument, as we've argued in the brief, is that when you're looking at this whole big, wide universe of public officials in public places, there are many, many legitimate applications of this statute. One imagines it's not only the police officers that strive for it. But he contemplated just that kind of hybrid situation where there would be a mixture of constitutional and unconstitutional applications and said that you can proceed with what amounts to a facial challenge limited to the unconstitutional applications. And what Reed said, what it ultimately held, is that the plaintiffs in that situation had failed to show that the statute, in that case it was the Washington Public Records statute, lacked a plainly legitimate sweep within the scope of what they were seeking. It's a relative calculus. The plainly legitimate sweep? Yes. It's not that there are plainly legitimate applications. That's contemplated even in a facial challenge. The question is whether there's a substantial amount of unconstitutional applications. That's the whole reason why, because of the First Amendment interests involved, we don't require it to go case by case, right? Your Honor, I don't think that's the case relative to its plainly legitimate sweep. How do you understand the test? As long as there are a number of legitimate applications, it doesn't matter how many illegitimate ones there are? Our understanding is that there needs to be a plainly legitimate sweep, and I don't doubt that that's relative. I guess our point here is that it doesn't require a great deal of imagination and hypothesis to conclude that the statute does have many legitimate applications, even as applied to public officials in public. But it also has, you'd have to concede, many. If the ground you're giving for why they are legitimate has to do with the privacy expectation of the individual, then it must be that one could easily hypothesize a substantial number of illegitimate applications. Because much recording could occur in which no private party would be picked up, or if a private party was picked up, that private party would be speaking in a way in which they would not have an expectation of privacy. Well, and I think I'm glad that you bring up the expectation of privacy, because that's not the yardstick that the legislature chose to use in determining what is permitted and what's not permitted under the statute. The principle that the legislature subscribed to in the government interest that we rest on in our brief is the notion that people have an interest in knowing when they're being recorded so that they can make appropriate choices about how to conduct themselves. It's not a far-fetched interest. As a matter of fact, it's consistent with the law as it stands. To go back to the question I asked you, the statute does not require that the party who is being recorded knows they're being recorded. There's no requirement of that in order for it to be permissible. In other words, open recording counts as open recording even if it's done in a way in which there is no real reason to think that the people being recorded would know they're being recorded. If it's done sufficiently removed, isn't that right? I don't think that's right, Your Honor, just because the way the state law has developed on this, there was a case in the 1970s, Commonwealth v. Jackson, that indicated that it was the knowledge of the person being recorded. The state law then progressed into the Hyde case and the Rivera case in the early 2000s that concluded that having the device in plain view was enough to deem the person being recorded as having knowledge that they're being recorded. Plain view to whom? I'm sorry? Plain view to whom? In other words, if I am at a remove holding up in plain view to others, it's hard to say I'm doing it secretly, but to the people I'm filming who are engaged in, say, the traffic stop, they may have no knowledge that I'm recording them. As I understand it, nothing in the statute requires them to have knowledge in order for me to be able to record as long as some other people could see I was recording. But the way the state law has developed on this, I think it's reasonable to interpret the state law as requiring the recording device to be in the plain view of the person being recorded because that's whose interests and that's whose rights the legislature sought to safeguard and address as a policy matter. And one can imagine many circumstances in which... So you're saying that if John Doe comes along, sees a police officer conversing with a politician, for example, they both have their backs turned to him. He holds out in plain view of everybody a tape recorder and turns it on, or cell phone, turns on the recording function. All right? They have their backs turned, but it's in plain view to anyone who wants to look. Everyone in the Boston Commons sees it except maybe the two people who are talking. And you are saying that is or isn't a violation of the statute? The state law hasn't addressed that scenario specifically, but the state law is clear that it doesn't depend on the actual subject.